662 P.2d 1135

STATE of Idaho, Plaintiff-Respondent,

v.

Darby SHARP, Defendant-Appellant.

No. 13604.

Supreme Court of Idaho.

April 28, 1983.

Larry D. Scott, of Lynn, Scott & Hackney, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BAKES, Justice.

Appellant appeals from a jury conviction for aiding and abetting in the delivery of a controlled substance.

On April 18, 1979, an undercover police officer and an informant went to appellant's residence for the purpose of purchasing narcotics. They were followed by an other officer in an unmarked vehicle, who was tape recording conversations made in the presence of the undercover officer (who was wearing a hidden microphone). The officer and informant contacted appellant, who entered their vehicle and directed them to a certain house. Appellant then went into that house and returned, accompanied by a friend, who then sold the officer one white envelope containing a substance later identified as PCP. The officer and informant then returned appellant to his home.

A complaint was filed against appellant on June 19, 1979, charging him with aiding and abetting in the delivery of a controlled substance. After arraignment and a preliminary hearing, the court ordered the parties to comply with discovery requests by August 17, 1979. Trial was set for September 5, 1979.

After several postponements of the trial date (at appellant's request), trial was finally set for November 1, 1979. A jury was selected and sworn. Appellant then moved to dismiss the action, based on failure of the prosecution to comply with the discovery order. The motion was denied, the prosecutor gave an opening statement, the first witness was sworn and asked to state his name. The defense then renewed the motion to dismiss for failure to comply with the discovery order. After arguments by counsel the court refused to dismiss the case, but asked defense counsel if he would like a continuance. The following exchange took place between the trial judge and defense counsel:

"THE COURT: . . .

"I don't think that this matter is so drastic since there was no motion to impose sanctions prior to trial ever filed on behalf of the defense that I should dismiss the case. I think that's extremely drastic.

"But I do think that I should do something to protect the defense in this matter, and I will grant a continuance should you wish, Mr. Wiebe.

"MR. WIEBE: Yes. I would like a continuance so that the State can comply

with discovery, and I can know precisely what their case is going to consist of, which is something I don't know at this point.

"THE COURT: Very well. I think that that motion is in order. I don't think there is any problem with that in the Court's mind."

The court then continued the trial date and dismissed the sworn jury.

On November 26, 1979, the date set for trial, appellant moved the court to dismiss the action, based on a fifth amendment double jeopardy claim. After argument, the trial court denied the motion. He ruled that the double jeopardy clause would not bar retrial under these facts. The judge also noted that he was treating the November 1 proceeding as a mistrial.

A new jury was sworn, trial completed, and appellant found guilty. Appellant now appeals his conviction on three grounds. His first ground is that his retrial on November 26, 1979, violated the double jeopardy clause of the fifth amendment of the United States Constitution. Second, he claims that evidence presented at the trial was insufficient to support a verdict of guilty. Finally, he urges that the trial court erred in admitting a tape recording of the drug transaction in question. We affirm.

■ We will consider appellant's double jeopardy claim first. The double jeopardy clauses of the fifth amendment,[1] which apply to the states through the fourteenth amendment, and of our own state Constitution[2] were intended to protect defendants against constant retrials by a state with limitless resources. Jeopardy attaches when a jury is sworn. *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978).

■ Where a trial is terminated over the objections of a defendant, a prosecutor must shoulder a heavy burden to allow for a retrial of the defendant. He must show the "manifest necessity" for the termination; if he cannot, then the double jeopardy clause will bar retrial of the defendant. *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963).

■ However, where a trial is terminated at the request of, or with the consent of a defendant, a different rule prevails. In these circumstances, the defendant is deemed to have waived his double jeopardy rights; thus, there is no constitutional barrier to reprosecution. *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *State v. Werneth,* 101 Idaho 241, 611 P.2d 1026 (1980), *cert. denied* 449 U.S. 1129, 101 S.Ct. 951, 67 L.Ed.2d 118 (1981).

■ There is one narrow exception to this general rule. *Oregon v. Kennedy, supra.* A defendant who moves for, or consents to a mistrial may raise a bar to retrial if the conduct that induced the mistrial motion was prosecutorial or judicial conduct designed specifically to provoke the defendant into calling for a mistrial. *Oregon v. Kennedy, supra; United States v. Dinitz, supra; see also* Comment, The Double Jeopardy Clause and Mistrials Granted on Defendant's Motion: What Kind of Prosecutorial Misconduct Precludes Reprosecution? 18 Duquesne L.Rev. 103 (1979). This exception is allowed only because:

"[W]here the prosecutor's actions giving rise to the motion for mistrial were done 'in order to goad the [defendant] into requesting a mistrial.' . . . [T]he defendant's valued right to complete his trial before the first jury would be a hollow

---

1. The fifth amendment to the United States Constitution reads in part as follows:

"[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ."

2. Art. 1, § 13, of the Idaho Constitution, reads in part as follows:

"No person shall be twice put in jeopardy for the same offense . . . ."

shell if the inevitable motion for mistrial were held to prevent a later invocation of the bar of double jeopardy in all circumstances." *Oregon v. Kennedy*, 456 U.S. at 673, 102 S.Ct. at 2088.

The United States Supreme Court in *Oregon v. Kennedy, supra,* has now specifically limited this exception to allow for a retrial of the defendant unless there is conduct *intended* to provoke the defendant into declaring a mistrial. *Id.* at 2089. A mere showing of prejudice is not sufficient. *Id.*

■ Appellant now urges that it was prosecutorial misconduct that forced him to ask the judge to continue the trial. He argues that the facts of this case fall within the exception noted above. We disagree.

The alleged "misconduct" which the defendant claims precipitated the termination of the trial in this case was the failure of the prosecutor to file a written response to the discovery order issued by the trial court.[3] There is no indication that the actions of the prosecutor were somehow fraudulent, or intended for the sole purpose of forcing the defendant to ask for a mistrial. The trial court treated this as a technical error made by the prosecutor, induced apparently by mere negligence of the prosecutor and not by the type of overreaching that would prevent a waiver of a defendant's double jeopardy rights.[4] *See Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973) (defective indictment caused defendant to move for mistrial; court ruled mere prosecutorial negligence erects no constitutional barrier to retrial; noted such a rule would place an unreasonable burden upon a prosecutor to produce flawless trials); *United States v. Zozlio,* 617 F.2d 314 (1st Cir.1980) (alleged failure of the government to comply strictly with pretrial discovery orders did not constitute sort of bad faith or affirmative overreaching which would bar retrial of defendants). Thus, we affirm the trial court ruling allowing defendant to be retried.

Appellant also contends that he could not have been convicted of aiding and abetting in the sale of a controlled substance because he did not intend to sell any controlled substance. He claims this lack of specific intent on his part would bar his conviction under the statute in question. Appellant cites cases from several jurisdictions which used this so-called "procuring agent" theory to relieve a defendant of any liability for aiding and abetting in the sale of a controlled substance. However, that argument misconstrues the nature of the statute under which appellant was convicted.

■ Appellant was convicted under I.C. § 37–2732.[5] That provision makes it unlawful to manufacture or *deliver* a controlled substance. The code section which defines the word "deliver," I.C. § 37–2701(f), makes it clear that a defendant need not have been an agent of another to

---

3. It is asserted by the state, and neither admitted nor denied by the appellant, that the prosecutor had responded orally to the discovery order.

4. The trial court ordered that all pretrial motions be filed at least fifteen days before the trial date. We note that defense counsel did not assert his motion to dismiss for lack of discovery until after the jury was empaneled. This was a clear violation of the court order. We also note that if defense counsel had filed his pretrial motion prior to the fifteen day limitation, the state could have complied with the discovery order before trial and no continuance (and/or mistrial) would have been necessary. We would also note that there is nothing in the record to indicate that defendant ever complied with the discovery order.

5. I.C. § 37–2732 reads in part as follows:
 "37–2732. PROHIBITED ACTS A—PENALTIES.—(a) Except as authorized by this act, it is unlawful for any person to manufacture or deliver, or possess with intent to manufacture or deliver, a controlled substance."
 I.C. § 18–204 provides that persons aiding and abetting in the commission of a crime are chargeable as principals. That section reads in part:
 "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, ... are principals in any crime so committed."

be guilty under this statute.[6] The "procuring agent" theory advanced by appellant has no application to a statutory scheme like ours, where the prohibited act is delivery rather than sale. *See United States v. Wigley,* 627 F.2d 224 (10th Cir.1980); *United States v. Hernandez,* 480 F.2d 1044 (9th Cir.1973). The evidence presented at the trial below was more than sufficient to convict appellant of aiding and abetting in the *delivery* of a controlled substance.

Finally, appellant alleges error in the admission of a tape recording of appellant's activities during the incident in question. At trial, defense counsel argued that the tape contained objectionable material, including hearsay and irrelevant matters. The trial court allowed only a copy of portions of the tape recording to be played to the jury, and defense counsel withdrew any objection to having the tape introduced in evidence, except for noting that the jury would have no way of knowing who was speaking at a particular time. The trial judge gave defense counsel the right to stop the tape at any time to identify the person speaking, but defense counsel did not exercise that right.

 The judgment of the trial court is presumed correct, and appellant has the burden of showing what error, if any, occurred at the trial level. *State v. Hobbs,* 101 Idaho 262, 611 P.2d 1047 (1980); *State v. Horn,* 101 Idaho 192, 610 P.2d 551 (1980). In the present case appellant asserts that introduction of this tape was error because it contained hearsay and irrelevant matters, but does not indicate what portions of the tape were objectionable, whether those parts of the tape were played to the jury, or cite any authority for his position. Under these circumstances, we will not presume error. We find no error in the trial judge's handling of the introduction of this tape.

DONALDSON, C.J., and SHEPARD and HUNTLEY, JJ., concur.

BISTLINE, Justice, concurring and dissenting.

I. The Court's opinion states that "Jeopardy attaches when a jury is sworn." From that point it is said by the Court that "Where a trial is terminated at the request of or with the consent of a defendant . . . the defendant is deemed to have waived his constitutional rights; thus there is no constitutional barrier to reprosecution." *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416, delivered in May of 1982—some two and a half years after the trial in this case, and almost two years after the briefs of the parties were filed—is said to stand for the High Court's present double jeopardy rule upon which this Court's opinion of today is predicated. But not, however, with any statement of the nature of the *Oregon v. Kennedy* controversy. Even a cursory reading of that case shows that Kennedy's trial ended on his own motion for mistrial, all of which has little to do with Sharp's case. Sharp's counsel at no time ever moved for a mistrial and, indeed, so far as the record shows, had no grounds for requesting the declaration of a mistrial. *The discharge of the first jury was not occasioned by any such motion of defense counsel.* Quite the contrary, defense counsel moved to dismiss because of the prosecution's neglect to comply with a discovery order. The trial court properly expressed due regard for the protection of defendant's rights, saying "I will grant a continuance, should you wish, Mr. Wiebe." Without doubt defense counsel then agreed to a continuance so that discovery could take place. Equally without doubt defense counsel did not move for a mistrial and discharge of the impaneled jury.

The minutes of the trial court are unequivocal:

"Another objection made by defense to the states witness because of the dis-

---

6. I.C. § 37–2701(f) reads as follows:

"37–2701. DEFINITIONS.—As used in this act:

. . . .

"(f) 'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship."

covery rule. Statements by both counsel in this regard. Defense request continuance.

"Court granted the continuance and directed both counsel to comply with the stipulation of discovery by November 13, 1979 and reset the trial for November 26, 1979 at 9:00 a.m. for one day."

Notwithstanding that it flies in the face of a documentary record, the Court blithely holds against defendant on the basis of his having moved for a mistrial. No mention is made of the prosecution's failure to caution the court against discharging the jury. Although defense counsel suggested a continuance of a week to ten days, for all that appears in the record a three to five day continuance should have been more than adequate.

When the court convened to commence anew a second trial and to consider defendant's motion to dismiss on double jeopardy grounds, the prosecutor, recognizing that a continuance had been ordered: "We have a situation where there is no conclusionary prior proceeding; rather this is a continuation, one that we already started."

The prosecutor was correct. Unfortunately, however, the trial court on its own volition had discharged the jury. The second trial, to be before a new jury other than one selected by the parties, was not the continuation which defense agreed to, but was a completely new trial. The prosecutor candidly conceded to the trial court that "double jeopardy . . . has now attached." The prosecutor's primary contention advanced to the trial court in argument opposing the motion to dismiss was a bare allegation of "essentially an invited error on the part of defense counsel."

The trial court solved the dilemma created by its own discharge of the jury by characterizing the granting of a continuance as being "in the nature of a mistrial

even though maybe the words were not used. I am going to treat it accordingly as a mistrial." It is not clear from the record whether the trial court did or did not make its ruling partly on the prosecutor's challenge to the timeliness of the defendant's motion. That, however, is of no consequence where this Court reaches its appellate decision on the basis that defendant was guilty of moving for a mistrial when all that defense counsel did was to accept the court's invitation to ask for a continuance. Notwithstanding the opinion the Court releases today, I would hope that future courts are able to draw the distinction that a defendant in moving for a mistrial does so on the basis that the impaneled jury has heard or seen something so prejudicial that a curing instruction would not suffice. A motion for mistrial contemplates the discharge of a jury and a trial before a new jury. A continuance is merely a delay in a trial that has once commenced.

*Oregon v. Kennedy* is interesting,[1] but has no applicability to the issue we review. The Court's concern should be with *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). In *Downum,* the case was called for trial and a jury was selected and sworn. After a luncheon recess the prosecutor asked that the jury be discharged since his critical witness on two of the counts was not present. Defendant moved for a dismissal of those counts, his motion was denied, and the jury was discharged. When the trial was reconvened two days later, defendant argued that further proceedings were barred by the double jeopardy clause. The trial court disagreed, a new jury was selected and sworn, trial was had, and defendant was found guilty on all counts. On appeal the United States Supreme Court reversed his conviction.

At the first trial the prosecutor had caused subpoenaes to issue to all his witnesses, but the court marshals had been

---

1. A teaching which *Oregon v. Kennedy* brings to the Court is the High Court's adherence to the "manifest necessity" standard applicable in the context of hung juries. In *State v. Tal-* *madge,* 104 Idaho 249, 658 P.2d 920 (1983), four members of the Court did not deign to give it any consideration whatever. One member did. See dissenting opinion of Bistline, J.

unable to serve the subpoena on one key witness. Despite this, *the prosecutor allowed the jury to be selected and sworn.* In its opinion, the Supreme Court adopted the following language of the Ninth Circuit in *Cornero v. United States,* 48 F.2d 69:

> "The situation presented is simply one where the district attorney entered upon the trial of the case without sufficient evidence to convict. This does not take the case out of the rule with reference to former jeopardy. There is no difference in principle between a discovery by the district attorney immediately after the jury was impaneled that his evidence was insufficient and a discovery after he had called some or all of his witnesses." 372 U.S. at 737–38, 83 S.Ct. at 1035, quoting *Cornero v. United States,* 48 F.2d at 71.

*See Annot.,* 74 A.L.R. 797.

The instant case is strikingly similar to *Downum.* Here, as there, a jury was impaneled in the initial proceedings causing jeopardy to attach. *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). And here, as there, the proceedings were discontinued because of the prosecutor's neglect. In *Downum* the prosecutor asked for the jury's discharge. In this case, the failure of the prosecutor to comply with discovery was challenged by way of a motion to dismiss the information. After colloquy, the court granted a continuance, with no harm done, but discharged the jury and thereafter caused a new jury to be sworn.

II. The matter of the tape recording is, to say the least, unusual. Defense counsel, rather conditionally and tentatively stated: "I have no objection to its admittance." But he did express wonder how the jury would identify the voices heard with particular persons, and opined that it was "pretty important for them to know precisely which individual is saying what here," and suggested that the prosecutor produce a transcription. The prosecutor declared that "The tape itself is valuable evidence. It tells the jury a lot more than the transcribed version..." The trial court observed that "some of it is illegible (unintelligible?), and the record will so note."

The prosecutor won the day with the argument that "if they don't know who said every single word, it doesn't really matter. It's up to them to listen to the tape and decide what they think of it."

Based thereupon the court concluded that the cassette would be admitted, and defense counsel would be entitled to stop the tape "and ask the question as to who is speaking." The prosecutor later suggested that Officer Schnebly would answer any identity inquiries proffered by defense counsel.

The court and its staff during noon recess copied portions of the cassette on a master tape, and such was played to the jury, but with both counsel stating no objection. The court did rule prior to the playing of the tape against defendant's motion that he desired "to object to certain portions," but the motion was denied. It is this ruling, and not the admission of the tape itself, which is assigned as an issue on appeal.

Being unable to ascertain from the record and the briefs what in the tape was improperly played to the jury, I am not persuaded of error in that regard. I do not, as does the Court, tacitly approve of the procedure followed, and I suggest that if a transcription could not have been made because of the poor quality of the recording, it is difficult to understand the rationale upon which twelve jurors were allowed to speculate as to what they were hearing.

III. Under the rather broad language of the statute criminalizing traffic in controlled substances, I am not persuaded of error in the contention that defendant acted only as an agent for Officer Schnebly, the purchaser, and concur in the Court's holding in that regard.