712 P.2d 585

**STATE of Idaho, Plaintiff-Appellant,**

v.

**Linda Mae ALANIS, Defendant-Respondent.**

**No. 15401.**

Supreme Court of Idaho.

Dec. 18, 1985.

---

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-appellant.

Gaylen L. Box and R. Ted Israel, Pocatello, for defendant-respondent.

BAKES, Justice.

This is an appeal by the State of Idaho from an "order granting [defendant] Alanis' motion to suppress all statements made by Alanis the day after the initial arrest," and the "entering [of] a judgment that Alanis is acquitted, entered in the above entitled action on the 11th day of January, 1984...." Notice of Appeal, Clerk's Tr., p. 229. There are two issues on appeal; first, whether either of these two actions of the trial court are appealable under I.A.R. 11(c), and secondly, if either is appealable, whether the trial court erred in either order. A brief chronology of events leading up to the challenged order follows.

I

On the evening of June 1, 1983, defendant respondent Linda Mae Alanis was taken into custody by Pocatello police following a fatal shooting in a trailer home at a local used car sales lot. Ms. Alanis was detained for the remainder of that evening and into the morning of June 2, 1983. During this period of detention, Ms. Alanis was interrogated by detectives concerning the shooting. These interrogation sessions were taped. On the morning of June 2, 1983, the detectives, presumably based on the results of their interrogation of respondent, sought and obtained a complaint and warrant for her arrest on charges of first degree murder. The warrant was executed and respondent remained in custody.

On June 6, 1983, respondent moved to have the complaint and warrant dismissed on grounds that the affidavit accompanying the request for the complaint failed to allege premeditation, and therefore the warrant was issued without probable cause. The motion was granted on June 16, 1983. However, on that same date a second complaint and warrant were issued charging respondent with second degree murder. Respondent was re-arrested on that day. A preliminary hearing on this last charge was held on July 5, 1983, at which time the magistrate reduced the charge to involuntary manslaughter and bound respondent over for trial on October 26, 1983.

The trial was continued twice on motions of the state until January 9, 1984. The basis for these continuances was the state's inability to procure the attendance of a key witness (one of the interrogating detectives) who was hospitalized with an extended illness. When it was determined that the officer would not recover so as to be able to attend trial on the 9th, the state deposed the officer on January 5, 1984.

On January 6, 1984, the Friday before the Monday trial, respondent, through court-appointed counsel, filed a motion to suppress the taped interrogations conducted by the police during her initial detention. Defense counsel argued that the contents of these interrogations were the fruit of an illegal arrest (i.e., the arrest was without probable cause) and therefore were inadmissible. The hearing on the motion to

suppress was scheduled for 9:00 a.m., January 9, 1984. Trial was scheduled to start that same day at 1:30 p.m.

At the hearing the state objected to the motion on grounds that it was untimely under Rule 12(d) of Idaho Criminal Rules. Although refusing the state's request for additional time in the form of another continuance, the trial court did delay further argument until the following day at trial. In the meantime, however, the court proceeded with trial on the 9th, having the jury selected and sworn. On January 10, 1984, after further oral argument outside the hearing of the jury, the court granted the motion to suppress. The jury was recalled into the courtroom and, when asked to proceed, the state replied that it could not continue with the presentation of its case without the suppressed evidence. Instead, the state explained that it would pursue an appeal of the court's order granting the motion to suppress pursuant to I.A.R. 11(c)(4). At that point, defense counsel moved for dismissal with prejudice. The court granted the motion, dismissed the case with prejudice, and acquitted respondent of all charges. The state has appealed.

## II

The first issue which we must decide is whether the order suppressing the evidence or the order granting a judgment of acquittal is appealable. While we conclude that the order of acquittal is not appealable under I.A.R. 11(c), the order suppressing the statements made by Alanis is expressly made appealable by I.A.R. 11(c), which provides that "an appeal as a matter of right may be taken to the supreme court from ... an order granting a motion to suppress evidence." I.A.R. 11(c)(4). The rule does not qualify or condition this right of appeal upon a subsequent entry of final judgment of conviction, nor does it state that such an appeal must be taken immediately upon entry of the order granting the motion. Accordingly, the state's appeal is properly taken as to the order suppressing the evidence. I.A.R. 11(c)(4).

## III

Having concluded that the order suppressing the evidence is appealable, we now address the merits of the state's argument that the trial court erred in considering and granting the motion. Idaho Criminal Rule 12 governs the filing of motions to suppress evidence and provides:

"(b) Pretrial motions. Any defense objection or request which is capable of determination without trial of the general issue may be raised before the trial by motion. The following *must* be raised prior to trial:

. . . .

"(3) Motions to suppress evidence on the ground that it was illegally obtained; ...

. . . .

"(d) Motion date. Motions pursuant to Rule 12(b) must be filed fourteen (14) days after the entry of a plea of not guilty or seven (7) days before trial whichever is earlier. Such motions must be brought on for hearing within fourteen (14) days after filing or forty-eight (48) hours before trial whichever is earlier. *The court in its discretion may shorten or enlarge the time provided herein, and for good cause shown, or for excusable neglect, may relieve a party of failure to comply with this rule.*

. . . .

"(f) Effect of failure to raise defenses or objections. Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial, or at the time set by the court pursuant to subsection (d), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court *for cause shown* may grant relief from the waiver." I.C.R. 12 (emphasis added).

In the case at bar, it is abundantly clear that none of the requirements for exemption from the rule's filing requirements have been met.

■ The rule permits a trial court to extend or shorten the required time and thus relieve a party from failure to comply with the deadlines. However, this discretionary power may be exercised only "for good cause shown, or for excusable neglect." In the instant case, neither exempting factor was established. When specifically asked whether there was good cause for the delayed filing of the motion, defense counsel admitted there was none. The colloquy between the trial judge and defense counsel at the time of hearing the motion to suppress was as follows:

> "THE COURT: Was there any reason why it was not filed before now, though?
>
> "[Defense Counsel]: Well, your Honor, we could have filed it before now—no, I guess there's no reason why it wasn't filed before now."

A court may not arbitrarily enlarge or shorten the filing requirements of the rule. To permit a court to do so without the required exempting factors would emasculate the intent of the rule. Pretrial motions are just that, motions to be disposed of prior to trial. Bringing such motions at the last minute unfairly deprives the responding party opportunity to gather evidence to meet the merits of the movant's arguments.

It can in no way be said in the present case that the state acquiesced in or consented to defendant's delayed filing of the motion to suppress, or to the trial court's decision to hear the motion. To the contrary, here the state objected to the untimely motion, and only when it was apparent that the motion would be considered anyway did the state request the trial court to enlarge the time required under the rule by way of a continuance in order that it might have adequate opportunity to prepare to respond to the merits of the defendant's motion. Delaying arguments on the motion merely to the next morning cannot be said to have given the state adequate time to prepare.

Clearly, the trial court abused its discretion in considering the motion which, for no good reason, was not timely filed. As a result, the trial court erred in granting the motion. Therefore, we reverse the order of the trial court granting the motion to suppress, recognizing that the acquittal and double jeopardy will no doubt prevent retrial of this matter.

The order of suppression is reversed.

SHEPARD, J., concurs.

DONALDSON, Chief Justice, concurring in part, dissenting in part and specially concurring.

■ It is obvious from the facts of this case that the defendant has been acquitted. Hence, jeopardy has attached. I agree with the dissenting opinions of Justices Huntley and Bistline on the issue of double jeopardy. In fact, the majority opinion of Justice Bakes agrees that jeopardy has indeed attached, but has remanded for the district court to come to that inescapable conclusion.

■ It is also clear that this is an appeal from an acquittal and not, as Justice Bakes suggests, an appeal from an order "granting a motion to suppress." The state's own argument and its Notice of Appeal indicate the state concedes its appeal is from an acquittal. The evidentiary ruling in this case led to the acquittal but "[t]hat judgment of acquittal, however erroneous, bars further prosecution on any aspect of the count and hence bars appellate review of the trial court's error." *Sanabria v. United States*, 437 U.S. 54, 69, 98 S.Ct. 2170, 2181, 57 L.Ed.2d 43 (1978). There are no grounds for appellate review of this criminal proceeding under I.A.R. 11(c).

■ However, under the Idaho Constitution, this Court has been granted special plenary powers to address issues of compelling importance to the administration of justice. ID. CONST. art. 5 § 9. In *State v. Dennard*, 102 Idaho 824, 642 P.2d 61 (1982), we stated with respect to such power, which is of necessity only sparingly invoked, that the case must "present a recurring question, the resolution of which would be of substantial importance in the administration of justice in this state." *Id.*

at 825, 642 P.2d at 62; *see also State v. Lewis,* 96 Idaho 743, 536 P.2d 738 (1975); *State v. Tinno,* 94 Idaho 759, 497 P.2d 1386 (1972). The present case, as the majority opinion suggests, raises an important issue with respect to the enforcement of I.C.R. 12; an issue capable of frequent recurrence at the trial level. As the majority opinion indicates, this rule was promulgated for a purpose and cannot be ignored by trial counsel for no reason at all.

It is clear from the record, and as illustrated by all the opinions in this case, there was a disturbingly substantial amount of error and parochial behavior on the part of defense counsel, and the prosecutor, which led the district judge to err. Such error cannot be lightly ignored by this Court. Fortunately for the defendant, she is spared the consequences of this error. Instead, the fair and orderly administration of justice in this state has been demeaned. It is a desire to promote and to preserve those principles of judicial administration that has prompted my fellow justices to speak today.

I, therefore, concur in the advisory majority opinion of Justice Bakes with respect to the enforcement of I.C.R. 12 and concur in the opinions of Justices Huntley and Bistline with respect to the application of double jeopardy.

HUNTLEY, Justice, dissenting.

I respectfully dissent from the majority opinion. It is analytically weak and portends a disturbing trend whereby this Court holds criminal defendants strictly accountable for failing to make timely objections or failing to follow proper procedure while at the same time this Court does not apply the same rigid standards to the prosecution.

■ I agree with that part of the majority opinion which states "we conclude that the order of acquittal is not appealable under I.A.R. 11(c)." However, since there

can be no appeal from the acquittal, all other issues raised on appeal are rendered moot. Therefore, I cannot concur with the majority's assertion that an appeal made pursuant to the provisions of I.A.R. 11(c)(4) must be heard by this Court where an acquittal has been entered. The majority quotes I.A.R. 11(c)(4) as providing that "an appeal as a matter of right may be taken to the Supreme Court from ... an order granting a motion to suppress evidence." A logical reading of this "mandatory" language would be that the "right" to an appeal exists only where a case remains at issue. Where, as here, no case remains at issue, the "right" to an appeal is completely without meaning. For this Court to proceed, at this time, to address a moot issue not only wastes judicial resources but brings this Court into the business of issuing advisory opinions, a practice of which I do not approve. Further, I disagree with the majority's analysis regarding whether the trial court erred in hearing the suppression motion.

The majority concludes that "[i]t is abundantly clear that none of the requirements for exemption from the rule's [I.C.R. 12] filing requirement have been met." The majority remarks that "a court may not arbitrarily enlarge or shorten the filing requirements of the rule," presumably concluding that the court's actions resulted in an enlargement of the filing requirements in the present case. It is of course clear that defense counsel was unable to satisfactorily explain his reason for the *delay in bringing the motion.* From that fact, however, the majority mistakenly concludes that good cause did not exist for the court *to hear* the motion. The majority's interpretation of I.C.R. 12 is both grudging and narrow. In fact, I.C.R. 12 permits the court to hear a suppression motion when there has been excusable neglect, which counsel was unable to establish, *or* when good cause otherwise exists, which the court *sua sponte* found to be the case.[1]

---

1. In oral argument before the district court, even the *prosecutor* argued that a continuance might be in order or that the motion should be

heard when the evidence was sought to be introduced at trial *"to protect the defendant's rights."*

The district court concluded that even though defense counsel had been unable to establish good cause for the delay in filing the motion, good cause to hear the motion nonetheless existed because Alanis should not have to go through trial and then raise the issue of counsel competency on appeal or in a petition for post-conviction relief simply because her counsel had not been conscientious.[2]

The majority complains that when defense attorneys bring suppression motions "at the last minute," the prosecution is unfairly deprived "of the opportunity to gather evidence to meet the merits of the movant's arguments." While I appreciate the majority's concern on this point and strongly disapprove of intentional delaying tactics, I think the majority's conclusion is too hastily drawn. First, a trial court could grant a continuance, as the prosecutor urged the court to do in the present case. Second, assuming the trial court refuses to order a continuance if one is requested, the prosecution should not blithely proceed with trial, as was done in the present case, but instead should seek a writ of prohibition from this Court. In the case at bench, upon being informed by the district court that the suppression motion would be heard, the prosecution failed to seek a writ of prohibition, staying the proceedings and ordering the court not to hear the suppression motion.[3] It need not be determined here whether this Court would have ordered such relief had it been petitioned; however, under the facts of this case, such a petition would have been proper. Here, the prosecution believed that evidence which was the subject of the suppression motion was *essential* to its case. The prosecution knew that if the trial court were to hear the suppression motion, there was a chance that the evidence might be suppressed. The prosecutor indicated that he thought the district court was acting in excess of its jurisdiction in hearing the motion. When a party is of an opinion that a court is in the process of acting in excess of its jurisdiction, the obvious procedure is to petition for a writ. A writ of prohibition would have resolved the question; it should have been filed prior to the jury being impaneled.

The majority opinion did not address the issue of whether the district court properly concluded that the challenged evidence was the fruit of an unlawful arrest. The Court's ruling today seems only to hold

---

Protection of a defendant's rights might well fall within the rubric of "good cause."

**2.** Under the holding of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) a defendant in order to succeed with a claim of ineffective representation must show the existence of a reasonable probability, but for defense counsel's errors, the result would have been different. This is a very difficult standard to meet. It is naive to think that a criminal defendant in a post-conviction relief proceeding raising the issue of counsel competency where counsel failed to bring a suppression motion which should have been granted is in nearly as advantageous a position as a criminal defendant whose suppression motion is heard prior to or at the time of trial. Prior to trial or during trial, a criminal defendant only need show that the evidence sought to be suppressed is the fruit of the police illegality. If the State is unable to purge the taint of the illegality, the evidence will be suppressed. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). After trial, even if the defendant can make that showing, it will be to no avail unless that defendant can also meet the much higher standard

of the "no conviction but for the admission of the evidence" test.

**3.** I.C. § 7–401 provides: The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person.

I.C. § 7–303 provides: The writ (of mandate) must be issued in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law. It must be issued upon affidavit, on the application of the party beneficially interested.

In the case at bar, it was clearly important that the issue of whether the trial court could properly hear the suppression motion be resolved *prior* to the swearing and impaneling of the jury so that there would be no question as to whether the state could proceed *before* the trial commenced. Under these facts, the prosecutor should not have proceeded to trial and should not have acquiesced in the swearing and impaneling of the jury but instead should have sought a prohibitive writ when the trial court said that it would hear the motion.

that the district court erred in *hearing* the motion when it did; however, it would seem that should a second trial ensue,[4] the suppression motion advocated might be made anew inasmuch as the State has already agreed to and advocated for such a procedure. The prosecutor argued, "I think it might be proper to allow counsel to raise the objection at trial rather than at a motion in limine, which would at least give us an opportunity of having a little more time." The prosecutor's statements were in keeping with a basic tenant of a free society that the State should not simply seek to convict but should also strive to ensure that justice is done. Clearly, if the evidence were the fruit of an unlawful arrest, it should be excluded. The State should not be permitted to convict a criminal defendant on the basis of illegally obtained evidence.

The majority also claims, "it can in no way be said in the present case that the State acquiesced in or consented to defendant's delayed filing of the motion to suppress, or to the trial court's decision to hear the motion." However, by not informing the district court that if it proceeded with the hearing the prosecution intended to petition for a writ, and by asking the district court to proceed with the hearing the following day, the prosecution surely did waive its right to later object. The prosecutor asserted that he was prepared to go ahead with the trial and would argue the suppression motion on the merits if given time to prepare a response. He stated:

> The State is not prepared *at this particular moment* to go ahead with arguments on the merits unless we're absolutely forced to. *I think it might be proper to allow counsel to raise the objection at trial* rather than at a motion in limine, which would at least give us an opportunity of having a little more time. But to have the evidence ruled out now after the defense counsel has had the opportunity to make this motion and has had two trial settings to prepare it,

*we would not be adverse to continuing the trial again* if the court were so disposed *to protect the defendant's rights* and to give the Court [sic] ample opportunity to consider the merits, if that's an opportunity that the court wishes to pursue. *I think that avenue would be appropriate.* But otherwise, we would ask the Court [sic] to dismiss the motion, *to delay the motion, until such time as the State proffers the evidence,* or to continue the trial. (Emphasis added.)

The district court responded:

> I'll certainly give you more time. I'm not going to continue the trial, Jon ... but I will hold off on the ruling on the motion until the evidence is offered, and that will give you more time to check it out.

Later that day, the district court and the prosecutor engaged in the following exchange:

> THE COURT: With respect to the motion to suppress, I'll give you an option, Jon, which ever way you'd like to do it. We can reargue it at 9:00 o'clock in the morning *or wait until the evidence is offered, and then on the objection of defense counsel we could argue it at that time.* (Emphasis added.)
>
> MR. ANDERSON: We'll argue it in the morning.
>
> THE COURT: So we'll proceed with the trial and then argue it in the morning....

With the prosecution's acquiescence, voir dire of the jury was conducted and the jurors were sworn.

The majority's conclusion that, "delaying arguments on the motion merely to the next morning cannot be said to have given the State adequate time to prepare," fails to recognize the fact that the district court offered the prosecution the precise option it had earlier requested—of waiting to hear the motion until the evidence was present-

---

**4.** As the jury had been sworn, jeopardy had attached and a second trial would therefore seem to be precluded. *State v. Sharp*, 104 Idaho

691, 662 P.2d 1135 (1983). Again, the majority evades discussion of this issue.

ed at trial, and *the prosecution chose* to proceed the following morning. Hence, the *prosecution* limited *its own* preparation time.

The prosecutor's "objection" to the district court's decision to hear the suppression motion was, at best, equivocal. The thrust of the prosecutor's objection was that the untimely filing made an adequate response difficult. Yet, when the district court offered the prosecution the option of responding to the motion the next morning or at the time the evidence was offered at trial, the prosecutor did not avail himself of the additional time to respond but instead chose the former option. The prosecutor at no point represented to the district court that if it proceeded to hear the suppression motion during trial that the prosecutor would appeal the judge's decision to hear it on the ground that it was not timely filed. Moreover, the prosecutor never represented to the district court that if it granted the suppression motion during trial that the prosecution would be unable to go forward with the evidence, not having sufficient remaining evidence to prosecute the case. Rather, the prosecutor represented to the district court that if the court would postpone hearing the motion and afford the State additional time to prepare to address it, the State *would proceed* with the prosecution. Implicit in this representation was the promise that when the motion would be heard the prosecutor would address it on *its merits*. At the time of the hearing, the prosecutor did not develop or present any response rebutting the defendant's version of the arrest and taping of the challenged statement. He did not refute the defendant's contention that the statement was the fruit of an allegedly unlawful arrest. Rather, he relied solely on his *pre-trial* position that the court should not hear the motion *at all* because it had not been timely filed. I fail to understand why, if the State intended to take this position all along, the prosecution encouraged the district court to postpone hearing the motion until after the trial had commenced, on the seeming pretext that such a delay would provide the State with more time to pre-

pare a response. In my view, even assuming the district court erred in finding good cause to hear the motion, the prosecution obviously acquiesced in the court's decision by agreeing to prepare to discuss the motion on its merits if the trial court would afford it more time, which it did. And, as I have explained above, the prosecution did not avail itself of the option presented by the district court affording additional preparation time—an option the prosecution had previously urged upon the court. Having acquiesced, the State is in no position to raise the error on appeal. This Court has repeatedly held that a criminal defendant cannot appeal from errors to which the defendant has not objected or in which he or she has acquiesced. *State v. Caudill*, 109 Idaho 222, 706 P.2d 456 (1985). It is only fair that the same rule should apply with equal force to the State. It has been said that the overriding concern in a criminal prosecution is that justice shall be done. *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Regretably, the majority's highly circumscribed interpretation of I.C.R. 12 cannot be said to have been guided by that principle. This tendency toward prosecutorial favoritism does not further the interest of justice; it denigrates it.

Accordingly, I dissent.

BISTLINE, Justice, concurring in the dissent of HUNTLEY, J.

It is interesting to observe that in the view of Justice Bakes, joined by the Chief Justice and Justice Shepard, the sole reason advanced for the promulgation of Criminal Rule 12(b) "is to avoid 'the serious inconvenience to jurors from unnecessary disruption of trial to deal with issues that could and should have been raised in advance.'" *State v. Collinsworth*, 96 Idaho 910, 539 P.2d 263 (1975); *State v. Gerhardt*, 97 Idaho 603, 549 P.2d 262 (1976).

For my part, I would prefer to see the Court having a little less concern for juror inconvenience and a little more concern for the integrity of a judicial system which is supposedly geared to greater aspirations.

Justice Bakes, in *Stockwell v. State*, 98 Idaho 797, 802, 573 P.2d 116, 121 (1977), observed that *"the overriding concern* in a criminal prosecution is ... that justice shall be done...."

The state's brief in this case commendably quotes the foregoing passage, and adds that evidence taken at the preliminary hearing indicated that Alanis shot the victim, and that a jury should have passed upon her innocence or guilt. If that be so, and the state says that it is, then it was the prosecutor who was perhaps in error in declaring as he did, in essence, that absent the suppressed evidence, he could not proceed, i.e., had no case. At any rate he declined to put on evidence which was admissible, and the prosecution was thereby terminated.

Although I.A.R. 11(c) does specify that an order granting a suppression motion is independently appealable, any practicing attorney will generally know, and every member of the Appellate Rules Committee who has assisted Justice Bakes in the making of rules will specifically know, the rule's intent was to position the state (but not the defendant) for the taking of an appeal so as to resolve the question immediately. Today, where the case has gone to a final judgment, and the suppression order was an incident of proceedings leading to that final judgment, how wonderful it may seem to the trial bar that Justice Bakes can reverse the suppression order but cannot bring himself to reverse *the final judgment of dismissal and acquittals which wholly terminated district court jurisdiction of the case.* That which Justice Bakes has done is akin to his opinion in *State v. Iwakiri*, 106 Idaho 618, 682 P.2d 571 (1984), where he correctly wrote that testimony in violation of the attorney-client relationship *mandated reversal, id.,* at 621, 682 P.2d at 574, and then, by adding that the reversal was for a new trial, kept Mrs. Iwakiri dangling in court as a criminal defendant all the while full well knowing that without the evidence which had been excluded a

second trial would never take place. And it did not.

So long as the final judgment in this case remains intact, Justice Bakes' views on the suppression issue are the equivalent of kicking a dead horse in the rump—satisfying but nonproductive.

Having concurred with the dissent of Justice Huntley, my consternation must also be expressed on finding any member of this Court willing to implement a double standard by which they will judge prosecutorial and defendant conduct in failing to make proper objections or in following proper procedures. Apparently, if you are a defendant, and you invite or acquiesce in error, you will be precluded from appealing the error, *see State v. Stuart*, Idaho, (Sup. Ct. No. 14865, issued May 3, 1985) reh. granted Sept. 20, 1985, but if you are the state and you invite—or at least acquiesce in—the error, you need not fear being precluded from asserting the error on appeal.[1]

In the constellation of constitutional and statutory rights—both federal and state— one overriding theme is readily apparent, and it is that "We the people," i.e., we the government, must be just and fair in the exercise of those powers given to and held by us in trust as officials of the government. To the extent that government trifles with justice, to the extent that it ignores fairness, then to that degree it has taken the law into its own hands. In doing so, it undermines the importance of rule of law, which is the distinguishing and guiding light in our democratic institutions; and where there is no rule of law, there is no rule at all.

Equally disturbing as the basis upon which Justice Bakes would have us decide the case is his refusal to squarely confront the primary and very fundamental issue on appeal—whether the double jeopardy provisions of the Fifth Amendment of the United States Constitution[2] and art. 1, § 13 of

---

1. Justice Huntley articulately points out how the state, at the very least, acquiesced in the district

court's decision, which Justice Bakes sees as error.

2. The Fifth Amendment reads:

the Idaho Constitution [3] preclude any retrial of the defendant. The issue was raised, briefed, and argued on appeal; it is the function of this Court to decide the issue. Stating only that jeopardy "no doubt" will prevent a retrial is a rather vaporous statement. Certainly it is of no benefit to Alanis who would have to undergo further judicial proceedings were Justice Bakes' views the majority, which is not so. *The three separate opinions of Chief Justice Donaldson, Justice Huntley, and myself, cumulate into a three-vote holding that jeopardy has attached and precludes any further judicial proceedings in this matter.* Three of us are so holding. What follows is an analysis of how that conclusion was reached.

BISTLINE, Justice, writing separately:

■ The purposes of all double jeopardy clauses are to protect criminal defendants from multiple trials, *United States v. Wilson,* 420 U.S. 332, 344–46, 95 S.Ct. 1013, 1022–23, 43 L.Ed.2d 232 (1975); *State v. Sharp,* 104 Idaho 691, 694, 662 P.2d 1135, 1138 (1983), and multiple punishments for the same offense. *Whalen v. United States,* 445 U.S. 684, 688, 100 S.Ct. 1432, 1435, 63 L.Ed.2d 715 (1980).

■ The federal jeopardy clause is applicable to the states through the due process clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794–96, 89 S.Ct. 2056, 2062–63, 23 L.Ed.2d 707 (1969). Thus, federal rules concerning jeopardy provide a benchmark or minimum set of standards by which jeopardy claims are to be decided. The incorporation of funda-

mental federal constitutional rights into the Fourteenth Amendment does not mean, however, that discovery of that which federal rights protect or how analysis of federal rights proceeds is necessarily the end of our inquiry. As declared by a unanimous Court this very year:

> State courts are at liberty to find within the provisions of their own constitutions greater protection than is afforded under the federal constitution as interpreted by the United States Supreme Court.... Long gone are the days when state courts will blindly apply United States Supreme Court methodology when in the process of interpreting their own constitutions. *State v. Newman,* 108 Idaho 5, 10 n. 6, 696 P.2d 856, 861 n. 6 (1985).

Thus, we turn to federal sources first in delineating what the federal constitution protects, and then analyze Idaho law on the matter.

■ The prohibition of multiple prosecution bars retrial after acquittal or conviction. *Fong Foo v. United States,* 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962); *In re Nielson,* 131 U.S. 176, 187–88, 9 S.Ct. 672, 675–76, 33 L.Ed. 118 (1889). In certain instances the jeopardy clause also bars retrial following a mistrial. *Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982).

■ What is an acquittal for double jeopardy purposes has been defined by the United States Supreme Court as "the ruling of a judge, whatever its label, [which] actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *United States v. Martin Linen Supply Co.,* 430 U.S. 564,

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; *nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb;* nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation. (Emphasis added.)

3. Article 1, section 13 reads:

> In all criminal prosecutions, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf, and to appear and defend in person and with counsel.
>
> *No person shall be twice put in jeopardy for the same offense;* nor be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty or property without due process of law. (Emphasis added.)

571, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977). A jury need not explicitly acquit the defendant so long as the acquittal is one on the merits. *Sanabria v. United States,* 437 U.S. 54, 65 n. 18, 98 S.Ct. 2170, 2179 n. 18, 57 L.Ed.2d 43 (1978).

The holding in *Sanabria* is of especial importance to this case because of strong factual similarities. The issue before the United States Supreme Court was "whether the United States may appeal in a criminal case from a midtrial ruling resulting in the exclusion of certain evidence and from a subsequently entered judgment of acquittal." *Id.,* at 56, 98 S.Ct. at 2174. The United States Supreme Court held that the government cannot because of the double jeopardy clause.

The United States Supreme Court reached this conclusion even through ruling that the district court below had *erred* in excluding crucial evidence incriminating to the defendant. *Id.,* at 78, 98 S.Ct. at 2186. The Court declared:

In deciding whether a second trial is permissible here, we must immediately confront the fact that petitioner was acquitted on the indictment. That " '[a] verdict of acquittal ... [may] not be reviewed ... without putting [the defendant] twice in jeopardy, and thereby violating the Constitution,' " has recently been described as "the most fundamental rule in the history of double jeopardy jurisprudence." *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977), quoting *United States v. Ball,* 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896). The fundamental nature of this rule is manifested by its explicit extension to situations where an acquittal is "based upon an egregiously erroneous foundation." *Fong Foo v. United States,* 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962); see *Green v. United States,* 355 U.S. 184, 188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). In *Fong Foo* the Court of Appeals held that

the District Court had erred in various rulings and lacked power to direct a verdict of acquittal before the Government rested its case. We accepted the Court of Appeals' holding that the District Court had erred, but nevertheless found that the Double Jeopardy Clause was "violated when the Court of Appeals set aside the judgment of acquittal and directed that petitioners be tried again for the same offense." 369 U.S., at 143, 82 S.Ct., at 672, 7 L.Ed.2d 629. Thus when a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous. *Id.* at 64–65, 98 S.Ct. at 2178 (footnote omitted).

In *Sanabria* an acquittal had been granted, because with the incriminating evidence excluded there was a "failure of proof on a key 'factual element of the offense charged.' " *Id.* at 71, 98 S.Ct. at 2183. The United States Supreme Court held this to be an acquittal for double jeopardy purposes. *Id.* Accordingly, because the double jeopardy clause prohibits the defendant from being tried again for the same offense, any appeal by the government is also precluded.

■ Exceptions to application of the double jeopardy clause exist. They are: (1) where a mistrial is declared for a "manifest necessity," [4] *Wade v. Hunter,* 336 U.S. 684, 689–90, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); (2) where the defendant requests a mistrial, and the reason the defendant made his or her request is *not* because of prosecutorial or judicial conduct intended to provoke the defendant into moving for a mistrial, *Kennedy, supra,* 456 U.S. at 680, 102 S.Ct. at 2091 and (3) where an indictment is dismissed at the defendant's request in circumstances functionally equivalent to a mistrial, *Jeffers v. United States,* 432 U.S. 137, 152–54, 97 S.Ct. 2207, 2216–18, 53 L.Ed.2d 168 (1977).

■ Finally, jeopardy attaches when a jury is sworn. *Crist v. Bretz,* 437 U.S. 28,

---

4. The most common form of "manifest necessity" is where a judge declares a mistrial because

the jury is unable to reach a verdict. *Kennedy, supra,* 456 U.S. at 673, 102 S.Ct. at 2088.

37–38, 98 S.Ct. 2156, 2161–62, 57 L.Ed.2d 24 (1978). The reason for this rule is that a defendant has a "valued right to have his trial completed by a particular tribunal." *Hunter, supra,* 36 U.S. at 689, 69 S.Ct. at 837. This right is deeply rooted in the history of Anglo-American jurisprudence. *Crist, supra,* 437 U.S. at 36, 98 S.Ct. at 2161.

This Court did not analyze to any degree Idaho's double jeopardy provision until 1940 when it decided *State v. Randolph,* 61 Idaho 456, 102 P.2d 913 (1940). In *Randolph* the Court announced the rule that jeopardy attaches "at least" on a defendant's plea of guilty. *Id.* at 459, 102 P.2d at 914. This rule tracks closely the federal rule. *See, e.g., Crist, supra,* 437 U.S. at 37 n. 15, 98 S.Ct. at 2162 n. 15. Subsequent cases to *Randolph* have also generally announced rules similar to federal rules.

In *State v. Hall,* 86 Idaho 63, 69, 383 P.2d 602, 605–06 (1963), this Court held that murder and robbery are separate and distinct crimes.[5] The Court stated that neither offense is the "same offense" as the other; therefore, Idaho's jeopardy clause is not implicated when the defendant was charged with robbery after having been indicted but never brought to trial on a charge of first degree murder. This is so even though both charges arose out of one transaction. *Cf., Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

In *Franklin v. State,* 87 Idaho 291, 306, 392 P.2d 552, 560–61 (1964), this Court stated that Idaho's jeopardy clause applies only to a person being put on trial a second time for the same offense, and not for the serving of a sentence imposed subsequent to a defendant's having been placed on parole, but who subsequently broke the terms under which the parole was granted.

In *Lewis v. Anderson,* 94 Idaho 254, 254–56, 486 P.2d 265, 265–67 (1971), the Court held that Idaho's jeopardy clause would not prohibit the refiling of a suit

against the defendant where the judge declared a mistrial because of the prejudicial impact of a newspaper article the judge had inadvertently read. The article disclosed the institution of a civil suit by the defendant against a witness who was going to testify against the defendant in the criminal suit. The judge claimed that the article prejudiced him against the defendant and *sua sponte* dismissed the jury. No witnesses had yet testified and neither party did anything to concur with or opposed the judge's decision. Stating that the judge was acting in the interests of the defendant, the Court said a "manifest necessity" justified the district court's decision to declare a mistrial. The Court relied upon *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), a case that was explained and narrowed in its scope in *Kennedy, supra,* 456 U.S. at 678–80, 102 S.Ct. at 2091. The reasoning in *Lewis v. Anderson,* however, is compatible with *Kennedy.*

In *State v. Gibbs,* 94 Idaho 908, 912–14, 500 P.2d 209, 213–15 (1972), this Court held that jeopardy does attach in juvenile proceedings brought under Idaho's Youth Rehabilitation Act. *Cf. Breed v. Jones,* 421 U.S. 519, 529–30, 95 S.Ct. 1779, 1785–86, 44 L.Ed.2d 346 (1978). *Gibbs,* when it was handed down, put Idaho in the forefront in expanding the jeopardy clause's scope and protection. *Gibbs, supra,* 94 Idaho at 913, 500 P.2d at 214.

In *State v. Salazar,* 95 Idaho 650, 651, 516 P.2d 707, 708 (1973), this Court held that a second persistent violator prosecution relying on offenses utilized to sustain a first persistent violator charge does not constitute jeopardy. *Compare Spencer v. Texas,* 385 U.S. 554, 564–678, 87 S.Ct. 648, 653–61, 17 L.Ed.2d 606 (1967). The rationale is that Idaho's persistent violator statute—I.C. § 19–2514—does not create a new or separate offense but merely makes it possible for the enhancement of punish-

---

5. *Hall's* reasoning has been followed in *State v. Mooneyham,* 96 Idaho 145, 147–48, 525 P.2d 340, 342–44 (1974) and *State v. Werneth,* 101 Idaho 241, 243, 611 P.2d 1026, 1028 (1982), *cert. denied,* 449 U.S. 1129, 101 S.Ct. 951, 67 L.Ed.2d 118.

ment for people convicted of three or more felonies.

In *State v. Lewis,* 96 Idaho 743, 750, 536 P.2d 738, 745 (1975), a unanimous Court per Justice Bakes held that dismissal of rape and kidnapping charges on defendants' motion for acquittal on the ground that the state's evidence was insufficient to sustain a conviction, though erroneously granted, constituted a factual determination of innocence favorable to the defendants. Thus, the defendants were protected from retrial on either charge because of the federal and state protections against double jeopardy. *Cf. United States v. Jenkins,* 420 U.S. 358, 369–70, 95 S.Ct. 1006, 1012–13, 43 L.Ed.2d 250 (1975).

In *State v. Thompson,* 101 Idaho 430, 433–36, 614 P.2d 970, 973–76 (1980), the Court held that where there was only one event—the defendant's shooting at the victim's door—the charge of assault with a deadly weapon was a lesser included offense in a charge of attempted robbery. Thus, constitutional double jeopardy provisions prohibit conviction of the defendant on both charges. *Cf. Harris v. Oklahoma,* 433 U.S. 682, 682–83, 97 S.Ct. 2912, 2912–13, 53 L.Ed.2d 1054 (1977).[6]

In *State v. Byers,* 102 Idaho 159, 167, 627 P.2d 788, 796 (1981), the Court cited authority from the Supreme Court of the United States which required our holding that abolishment of the requirement of corroboration in sex crime cases could only be applied prospectively. The reason given was that the defendant had been tried under the previous rule requiring corroboration, and under that rule defendant's conviction would have been reversed because there was insufficient evidence of corroboration. Ordering a retrial or affirming the defendant's conviction, the court held, was not possible because the evidence under the law as it existed at the time of trial was insufficient to support the conviction, and

double jeopardy prohibits further proceedings.

In *State v. Talmage,* 104 Idaho 249, 253, 54, 65 P.2d 920, 924–25 (1983), the Court held that double jeopardy would not bar retrial of the defendant where the district court had declared a mistrial because the jury was not capable of reaching a verdict. In so doing the Court relied upon *Kennedy, supra,* and statements contained therein, that hung juries are the "prototypical" example of meeting the manifest necessity standard.

In *State v. Sharp,* 104 Idaho 691, 693–94, 662 P.2d 1135, 1137–78 (1983), the Court held that prosecutorial misconduct in the case was not intended to provoke the defendant into requesting a mistrial. In *Sharp* the prosecution had failed to answer defendant's interrogatories, which had been submitted during the discovery phase of the case. The defendant requested a dismissal at the beginning of trial, which was denied by the district court. The district court, however, decided to grant defendant's request for a continuance during which the state would answer the requested questions. The court, *sua sponte,* then dismissed the jury which had been previously sworn.

In the subsequent trial, defendant was convicted. This Court, on appeal, agreed with the district court that the prosecutor's failure to answer defendant's interrogatories was a "technical" error, and that there was no evidence that the prosecutor's actions were intended to provoke defendant into requesting a mistrial. The Court also declared that it was applying the rules of law handed down in *Kennedy, supra.* The Court, in part, aligned itself with federal precedent in declaring that, under Idaho's Constitution, jeopardy attaches when a jury is sworn, in stating that the primary purpose of the double jeopardy clause is to

---

**6.** *Brown v. Ohio,* 432 U.S. 161, 169–70, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977) suggests an exception to this rule. In *Brown* the Supreme Court stated that prosecution for a *greater* offense following prosecution for a *lesser* included offense is permissible if the state can show that

it was unable to proceed on the more serious charge at the outset because events necessary to sustain that charge had either not yet occurred or had not yet been discovered by the state despite due diligence.

prevent a defendant from being continually retried by the state with its limitless resources, and in adopting the *Kennedy* rule for determining the applicability of the jeopardy clause after a defendant has been granted his or her motion for mistrial. *Id.*

The dissent in *Sharp* accurately points out that the jury in *Sharp* was not dismissed upon defendant's request. Rather, the defendant, after having his motion to dismiss denied, had then moved for a continuance. No mention is made of the prosecution's failure to caution the court against discharging the jury. The overlooking of this crucial distinction—that between a mistrial, which requires new jurors and a new trial, and a continuance, which merely "continues" the same trial and keeps intact the original jury—is inexcusable. It fatally flaws any precedential value *Sharp* may have had. Even a cursory review of the record in *Sharp* reveals that resort to *Kennedy* was incorrect, because it was inapplicable, it only applying to instances where the *defendant* requested a *mistrial or dismissal.* It is readily apparent that the majority in *Sharp* should have focused upon the "manifest necessity" standard. *See, e.g., Lewis v. Anderson, supra; Hunter, supra.*

In failing to recognize this distinction and the inapplicability of *Kennedy, Sharp* comes into conflict with United States Supreme Court decisions on this issue. *Crist, supra,* 437 U.S. at 37, 98 S.Ct. at 2161; *Hunter, supra,* 336 U.S. at 689, 69 S.Ct. at 837. With these rules in mind, it is now in order to turn to the facts surrounding the case at hand.

█ Under application of both federal and Idaho law, jeopardy had attached and bars the state from retrying Linda Alanis. The reasoning in *Sanabria, supra,* and *State v. Lewis, supra,* lead inexorably to the conclusion that jeopardy precludes retrial. In both cases, the trial judges incorrectly suppressed or evaluated evidence in concluding that insufficient evidence existed by which to convict the defendants. Nevertheless, because the defendants had been acquitted, the United States Supreme Court and this Court both held that jeopardy precluded retrial.

The facts of *Alanis* are not in dispute and lead to the same result. Those facts include the following: A jury was selected and sworn in the trial of Linda Alanis. The judge ruled that certain evidence was unconstitutionally obtained and excluded it. The judge then asked for the prosecution to continue with the case. The prosecution refused to do so, saying that it did not believe that it could proceed without the evidence which had been suppressed. In this posture of stalemate the defendant requested a dismissal with prejudice. The district court obviously was left with no alternative but to enter the dismissal, except of course for the fact that the judge could have swallowed his conscience and reversed his own ruling. The particular judge involved, however, was not of such weak temperament that he would succumb to the prosecutor's whimsy. Clearly *the prosecutor had advised the court of the prosecution's belief that there remained insufficient evidence to justify a conviction,* and the entry of an acquittal, as clearly provided for in I.C.R. 9, was upon this basis.

█ Even if somehow there were some doubt about the entry of the acquittal, jeopardy would still bar a retrial. As Justice Bakes declared for the unanimous Court, which included Justice Shepard, in *State v. Lewis, supra,* where the Court was deciding whether jeopardy prohibited two defendants from being retried on rape charges that had been erroneously dismissed by the district court:

> It is unclear upon what basis the rape charges were dismissed, whether they were dismissed upon an erroneous evaluation of the evidence or upon an erroneous interpretation of the law, *but because the dismissals might have been based upon a factual determination favorable to the defendants they cannot be retried upon the rape charges.* State v. Lewis, supra, 96 Idaho at 750, 536 P.2d at 745 (emphasis added).

It is clear that the dismissal here not only "might have been based upon a factual determination favorable" to Alanis, but was so based by reason of the prosecutor's evaluation of the sufficiency of his remaining evidence. Accordingly, she cannot be retried, and a majority of this Court so holds.

 Idaho statutory law also prohibits the state from retrying Alanis. I.C. § 19–1719 reads as follows: "When the defendant is convicted or acquitted, or has once been placed in jeopardy upon an indictment, the conviction, acquittal or jeopardy is a bar to another indictment for the offense charged in the former, or for an attempt to commit the same, or for an offense included therein, of which he might have been convicted under that indictment." I.C. § 19–1718 defines an acquittal as follows: "Whenever the defendant is acquitted on the merits he is acquitted of the same offense, notwithstanding any defect in form or substance in the indictment on which the trial was had." It is readily apparent that an erroneous decision on the merits is of no consequence in determining whether a defendant can be retried. The statute makes no exceptions: so long as the defendant was acquitted, and the reason is a failure of sufficient evidence to convict the defendant, the state cannot retry him or her for the same offense. Therefore, on statutory grounds as well as on constitutional grounds, we hold that Alanis cannot be retried on the matter upon which she was charged and acquitted.

HUNTLEY, J., concurs.