979 P.2d 1192

**Teresa LOWDER, Carlos Roundy and Steven Winks, Plaintiffs–Respondents,**

v.

**MINIDOKA COUNTY JOINT SCHOOL DISTRICT NO. 331, Defendant–Appellant.**

No. 24499.

Supreme Court of Idaho, Boise, February 1999 Term.

June 11, 1999.

Anderson, Julian & Hull, LLP, Boise, for appellant. Brian K. Julian argued.

John E. Rumel, Boise, for respondents.

KIDWELL, Justice.

Minidoka County Joint School District No. 331 (School District) appeals the district court's grant of summary judgment for Teresa Lowder, Carlos Roundy, and Steven Winks (Teachers). The district court ruled that the School District violated the Teachers' statutory and constitutional rights by removing their extra day assignments, and

thus reducing their salaries, without notice and a prior hearing. We affirm.

## I.

## FACTS AND PROCEDURAL BACKGROUND

The Teachers were certificated teachers on renewable contract status with the School District in 1995. In addition to their assignments for the regular 190-day school year, all of the Teachers taught their regular subjects in summer school. Starting in 1992, Winks had taught summer school at the Juvenile Detention Center; since 1993, Lowder and Roundy had taught 40 extra days at the Idaho Youth Ranch. The extra days constituted a substantial portion of each Teacher's salary (17.4% for Lowder and Roundy and 13.6% for Winks in 1994–95).

In 1992 and 1993, the School District issued State of Idaho Teacher's Standard Contracts (standard contracts) to its teachers which incorporated their actual salaries for the upcoming school year. In both years, the School District incorporated extra day assignments and their corresponding salaries into the main text of the agreement. For example, in 1993–94, when Lowder's 190-day base salary was $29,570 and she worked 40 extra days in Special Services for an additional $6,225, Lowder's standard contract read, "The District hereby employs the Teacher for the school term commencing on or about August 23, 1993 and consisting of a period of 230 days and agrees to pay the Teacher ... $35,795...."

For the 1994–95 school year, the School District modified its previous practice. In May, when teachers gave notice that they would renew their contracts for the coming year, the School District issued standard contracts covering only the 190-day minimum school year. For example, Lowder's May 1994 contract read, "The District hereby employs the Teacher for the school term commencing on or about August 23, 1994 and consisting of a period of 190 days and agrees to pay the Teacher ... $29,570...." Rather than being the actual salary which Lowder would receive for 1994–95, the listed salary was her base salary for the previous school year. The listed salary did not reflect mandated salary increases for education and experience.

In September 1994, the School District followed up with "Contract Change Orders" (change orders) for the 1994–95 school year. The change orders updated the base salary to reflect mandated increases for education and experience. In addition, the change orders specified additional salary for extra assignments. For example, Lowder's September 1994 change order listed an updated base salary of $33,005 and 40 extra days under "Special Services" with a corresponding salary of $6,948. All the Teachers followed the two-step process for the 1994–95 year: they signed standard contracts in May, and later signed change orders which reflected mandated salary increases and contained extra day assignments of 30–40 days.

House Bill 1560, enacted in April 1994, changed the manner in which Idaho public schools were funded effective July 1994. 1994 Idaho Sess. Laws ch. 428. As a result of this legislation, the School District changed the manner in which it funded the Idaho Youth Ranch and Juvenile Detention Center. In May 1995, Wayne Bagwell, the School District's Director of Special Services, informally told the Teachers that funding changes made it unlikely that they would serve their full summer school assignments during the summer of 1995. However, all the Teachers worked the full number of extra days in their 1994–95 contract.

In May 1995, like the previous year, the Teachers signed standard contracts for the 1995–96 school year which covered only a 190-day period and listed salary levels from the previous school year. In August 1995, as in the previous year, the School Board met to approve extra assignments for the coming school year. The School Board approved two lists. One listed individuals with extra duty assignments for activities such as coaching sports or advising clubs; the other listed individuals with extra day assignments. The Teachers were not listed as having extra day assignments. The School Board did not discuss the assignments of any individual teacher at this meeting, and the Teachers were

not informed that they would not receive extra day assignments for 1995–96.

After the School Board's meeting, the School District issued change orders for the 1995–96 school year. The Teachers' change orders contained mandated base salary increases, but did not include extra day assignments. The Teachers' extra day assignments were eliminated for budgetary reasons, not because of any problems with their performance as teachers. The Teachers signed the change orders but attached supplements which preserved their right to grieve the elimination of the extra day assignments.

Within the required contractual period, the Teachers filed grievances with the School District. After exhausting remedies at the District level, they requested arbitration. The arbitrator issued an advisory opinion denying the Teachers' grievances on March 15, 1996.

The Teachers filed suit in district court on July 13, 1996, alleging five causes of action. The School District filed a motion for summary judgment on November 19, 1996. The Teachers filed a cross-motion for summary judgment on April 15, 1997. The district court granted the Teachers' motion for summary judgment on three claims based on violations of I.C. § 33–515, the Fourteenth Amendment of the U.S. Constitution through 42 U.S.C. § 1983, and Article I, § 13 of the Idaho Constitution. After the parties stipulated to judgment, the district court entered judgment on February 5, 1998. It awarded damages amounting to $22,889.44 to the Teachers, staying execution pending appeal. The district court entered judgment for the School District on the remaining claims, which were not appealed.

On appeal, the School District raises two basic issues. First, it challenges the district court's conclusion that the School District violated I.C. § 33–515 by eliminating the Teachers' extra day assignments. Second, it disputes the district court's conclusion that the School District violated the Teachers' constitutional due process rights by eliminating their extra day assignments without notice and a hearing. As an additional issue, the Teachers seek an award for their attorney fees incurred in responding to the appeal.

## II.

## STANDARD OF REVIEW

When this Court reviews a district court's grant of summary judgment, it uses the same standard as that properly employed by the district court originally ruling on the motion. *McKay v. Owens,* 130 Idaho 148, 152, 937 P.2d 1222, 1226 (1997). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). When, as here, both parties file motions for summary judgment relying upon the same facts, issues, and theories, the parties essentially stipulate that there is no genuine issue of material fact that would preclude the court from entering summary judgment. *Hunting v. Clark County Sch. Dist. No. 161,* 129 Idaho 634, 637, 931 P.2d 628, 631 (1997). On appeal, this Court exercises free review over the entire record that was before the district court in order to determine whether either party is entitled to judgment as a matter of law. *Id.; City of Sun Valley v. Sun Valley Co.,* 128 Idaho 219, 221, 912 P.2d 106, 108 (1996).

## III.

## ANALYSIS

A. **The School District Violated I.C. § 33–515 by Terminating the Teachers' Extra Day Assignments Without Following Statutory Procedures.**

The district court held that the School District violated the Teachers' rights by removing their extra day assignments without the notice and hearing required by I.C. § 33–515. The School District contends that the statute's notice and hearing requirements apply only to reductions in the 190-day base salary, and only when teachers are being disciplined.

Certificated teachers who have served three years in the same school district gain renewable contract status under Section 33–515 of the Idaho Code. This statute specifies procedures and protections applicable to all renewable contract teachers. In pertinent part, it provides:[1]

(¶ 3) Any contract automatically renewed under the provisions of this section shall be for the same length as the term stated in the current contract and at a salary no lower than that specified therein, to which shall be added such increments as may be determined by the statutory or regulatory rights of such employee by reason of training, service, or performance.

(¶ 4) Nothing herein shall prevent the board of trustees from offering a renewed contract increasing the salary of any certificated person, or from reassigning administrative or supervisory employees to classroom teaching duties or removing an extra duty assignment from a certificated employee with appropriate reduction of salaries from pre-existing salary levels.

(¶ 5) Before a board of trustees can determine not to renew for reasons of an unsatisfactory report of the performance of any certificated person whose contract would otherwise be automatically renewed, or to renew the contract of any such person at a reduced salary, ... [provides probation procedures].

(¶ 6) If the board of trustees takes action to immediately discharge or discharge upon termination of the current contract a certificated person whose contract would otherwise be automatically renewed, or to renew the contract of any such person at a reduced salary, the action of the board shall be consistent with the procedures specified in section 33–513(5), Idaho Code, and furthermore, the board shall notify the employee in writing whether there is just and reasonable cause not to renew the contract or to reduce the salary of the affected employee, and if so, what reasons it relied upon in that determination.

(¶ 7) If the board of trustees, for reasons other than unsatisfactory service, for the ensuing contract year, determines to change the length of the term stated in the current contract, reduce the salary or not renew the contract of a certificated person whose contract would otherwise be automatically renewed, nothing herein shall require a probationary period.

The State of Idaho Teacher's Standard Contract contains six sections. Sections Two through Six specify the terms and conditions of employment. Section One specifies the starting date, the number of days in the contract term, the payment schedule, and the total salary.

In 1993–94, each Teacher's contract with the School District was contained on one form, the standard contract, which reflected the complete agreement between the parties. The first sentence of § 1 (the narrative line) summarized the contract terms and total salary in narrative form. The last few lines of § 1 (the computation lines) allowed computation of the total salary by providing blanks for base salary, the education and experience on which the base salary was calculated, and "Special Services," which covered payments other than base salary. The narrative line reflected that the complete agreement between the parties encompassed all days and salary identified in the computation lines. As stated in the narrative lines of their respective contracts, in 1993–94 Lowder had a renewable contract term of 230 days, Winks a contract term of 220 days, and Roundy a contract term of 230 days. Under I.C. § 33–515 ¶ 3, these contracts were automatically renewable in 1994–95 for the same length of term. Thus, Lowder and Roundy's contract terms could not be renewed for less than 230 days, and Winks's contract for less than 220 days, without the notice and hearing required by I.C. § 33–515 ¶ 6.

Starting in 1994–95, the School District bifurcated its contract procedure. Thereafter, the complete contract agreement between the Teacher and the School District consisted of both the standard contract and

---

1. The subsections of I.C. § 33–515 are not numbered. For ease of reference, this opinion refers to each subsection by paragraph number.

the change order. The standard contract, signed in May, contained the terms and conditions of employment, as well as the starting date and payment schedule. In the fall, the change order, a local form which essentially reproduced the computation lines of the standard contract, specified the Teacher's education and experience, updated the base salary, and identified special services assignments.

■ In previous years, the School District had treated the complete agreement between the parties as encompassing all days and salary identified in the computation lines. In 1994–95 and later years, to the extent that the computation lines of the change order conflicted with the figures in the narrative line of the standard contract, the computation lines prevailed as an expression of the parties' intent. Lowder's contract was not transmuted into a 190-day contract by the "190" written into the narrative line of the standard contract any more than her base salary was arrested by having the previous year's base salary written into the narrative line, or the education on which her base salary was partially computed was arrested at the previous year's level by being recorded on the narrative line. Only the figures in the change orders reflected the intent of the parties and were contractually binding.

Therefore, in 1994–95, as in previous years, the contract term of employment for the Teachers consisted of the base 190 days plus the extra days identified under Special Services. In 1994–95, Lowder had an automatically renewable contract term of 230 days; Winks a term of 220 days, and Roundy a term of 230 days.

■ When the School District failed to renew the Teachers' extra day assignments in 1995–96, it did not renew the Teachers' contracts for the same length as the term stated in the 1994–95 contract, as required by I.C. § 33–515 ¶ 3. While the School District was entitled to remove the Teachers' assignments and reduce their salaries under I.C. § 33–515 ¶ 4, doing so required it to follow the notice and hearing requirements of I.C. § 33–515 ¶ 6. The statutory due process requirements of ¶ 6 apply to all terminations and salary reductions, not just those based

on unsatisfactory job performance. It is uncontested that the school board neither notified the Teachers in writing of the cause of and reasons for their salary reduction, nor followed the hearing procedures required by ¶ 6. Therefore, the district court correctly concluded that the School District violated I.C. § 33–515 by terminating the Teachers' extra day assignments without following statutory procedures.

**B. The School District Violated the Teachers' Rights to Procedural Due Process Under the Fourteenth Amendment to the United States Constitution by Eliminating Their Extra Day Assignments Without Notice and a Prior Hearing.**

■ The district court held that the School District violated the Teachers' right to procedural due process under the Fourteenth Amendment when it removed their extra day assignments without notice and a hearing. The School District contends that the Teachers had no property right in their employment beyond the base 190-day term.

Persons who are deprived of federal rights under color of state law may sue for relief under 42 U.S.C. § 1983. The Teachers assert that the School District deprived them of a property right in their teaching contracts without affording the procedural due process required by the Fourteenth Amendment to the U.S. Constitution.

■ "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (1972). The Teachers' terms of employment included their extra day assignments. Because state law gave them a right to renew their contracts for the same length and pay as their current contracts, the Teachers had a property right in their extra day assignments. *See Cleveland Bd. of Educ. v. Loudermill (Loudermill )*, 470 U.S. 532, 538–39, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494, 501 (1985).

The Teachers did not receive notice that their term of employment for the 1995–96 school year would be reduced. Bagwell did talk to the Teachers in May 1995 about the possibility of funding cuts in summer programs. However, it appears that both the Teachers and the School District understood the funding cuts as affecting programs in Summer 1995, covered under the Teachers' 1994–95 contracts. Nothing in the record shows any additional warning or individualized notice that the Teachers' extra day assignments for Summer 1996 were in jeopardy.

■■■ A person must receive notice and "an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations." *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971). As in all procedural due process cases, the interest of the individual, the risk of an erroneous deprivation of the individual's interest, and the interest of the government must be balanced. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976). In employment cases, a pre-deprivation hearing is required because of the "significance of the private interest in retaining employment" and the fact that "the only meaningful opportunity to invoke the discretion of the decisionmaker" is before the decision is made. *Loudermill*, 470 U.S. at 542–43, 105 S.Ct. at 1493–94, 84 L.Ed.2d at 504–05.

The Teachers did not receive notice that the term of their 1995–96 contracts would be reduced, and they did not receive a pre-deprivation hearing. Therefore, the School District's action violated their due process rights under the Fourteenth Amendment.

## C. This Court Declines to Address the Issue of Whether the School District's Actions Violated the Teachers' Rights to Procedural Due Process Under Article I, Section 13 of the Idaho Constitution.

■■■ Where an appellant fails to list the issues it wants this Court to address in a statement of issues in its brief, as required by I.A.R. 35(a)(4), we may decline to consider the issue. *The Highlands, Inc. v. Hosac*, 130

Idaho 67, 71, 936 P.2d 1309, 1313 (1997). In addition, this Court will not address issues on appeal that are not supported by authority or argument. *Saint Alphonsus Reg'l Med. Ctr. v. Bannon*, 128 Idaho 41, 44, 910 P.2d 155, 158 (1995).

The School District did not list violation of the state constitution as an issue on appeal. It also failed to argue the state constitutional issue in its opening brief. Because the School District failed to either list or argue the due process requirements of the Idaho Constitution on appeal, we decline to address the issue. Therefore, we affirm the district court's grant of summary judgment on the issue.

## D. The Teachers Are Entitled to Attorney Fees on Appeal Under 42 U.S.C. § 1988.

■■■ The Teachers seek attorney fees on appeal pursuant to 42 U.S.C. § 1988. A court may, at its discretion, award attorney fees to a prevailing party in a federal civil rights action under the authority of 42 U.S.C. § 1988(b). Attorney fees can be awarded for parties prevailing either at trial or on appeal. *Hutto v. Finney*, 437 U.S. 678, 693–94, 98 S.Ct. 2565, 2574–75, 57 L.Ed.2d 522, 536–37 (1978). To be a prevailing party, a civil rights plaintiff must obtain relief on the merits of the claim. *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S.Ct. 566, 573, 121 L.Ed.2d 494, 503 (1992).

■■■ The amount of fees awarded is determined in large part by "the degree of the plaintiff's overall success." *Id.* at 114, 113 S.Ct. at 574, 121 L.Ed.2d at 505 (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866, 878 (1989)). Where the plaintiffs' claims for relief "involve a common core of facts or [are] based on related legal theories" such that "counsel's time [is] devoted generally to the litigation as a whole," the court "should focus on the significance of the overall relief obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40, 51 (1983). "Where a plaintiff has obtained excellent re-

sults, his attorney should recover a fully compensatory fee." *Id.* at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 52.

Here the Teachers are the prevailing party on appeal. The same facts regarding the School District's contract process applied to both their federal and state claims. In order to prevail on their federal civil rights claim, the Teachers had to prove that they had a property interest under state law. They have obtained "excellent results" by prevailing on all claims on appeal based on this contract. *Id. See also Lubcke v. Boise City/Ada County Hous. Auth.*, 124 Idaho 450, 454–55, 468, 860 P.2d 653, 657–58, 671 (1993) (awarding attorney fees under 42 U.S.C. § 1988 for a successful appeal of mixed state and federal claims). Therefore, we award attorney fees on appeal to the Teachers pursuant to 42 U.S.C. § 1988.

## IV.

## CONCLUSION

The School District violated the Teachers' statutory rights, as well as their procedural due process rights under the Fourteenth Amendment, by eliminating, without notice and a prior hearing, extra day assignments which were part of the Teachers' automatically renewable terms of employment. Because the School District did not present the state constitutional issue, we decline to address it. We affirm the judgment of the district court awarding damages to the Teachers. Costs and attorney fees on appeal are awarded to the Teachers.

Chief Justice TROUT, Justices SILAK, SCHROEDER, and WALTERS CONCUR.