38 P.3d 1266

Jose Mary **GARCIA**, Plaintiff–Appellant,

v.

**STATE TAX COMMISSION OF the STATE OF IDAHO**, Defendant–Respondent.

No. 25561.

Supreme Court of Idaho, Boise, September 2001, Term.

Jan. 9, 2002.

---

Roark Law Firm, Hailey; Hampton & Elliott, Boise, for appellant. R. Keith Roark argued.

Hon. Alan G. Lance, Attorney General, Boise, for respondent. Charles E. Zalesky, Deputy Attorney General, argued.

## OPINION ON REHEARING THE COURT'S PRIOR OPINION DATED DECEMBER 29, 2000, IS HEREBY WITHDRAWN

TROUT, Chief Justice.

On rehearing from this Court's previous opinion affirming an order granting the State Tax Commission's motion for summary judgment, we affirm.

## I.

### FACTUAL AND PROCEDURAL HISTORY

State and local law enforcement authorities, acting under search warrants, seized suspected controlled substances from the home and workplace of Jose Mary Garcia ("Garcia"). The Bureau of Forensic Services laboratory ("state laboratory") identified the seized substances as marijuana and cocaine and provided weights for each sample. Based upon the same evidence used for the jeopardy assessments, Garcia plead guilty in federal district court to possession of a controlled substance with intent to distribute and was sentenced to ten years in prison. The State initiated civil forfeiture actions against Garcia's real and personal property.

Immediately after the seizure, pursuant to Idaho Code § 63–4208(2), the State Tax Commission ("Tax Commission") served Garcia with "Notice[s] of Jeopardy Assessment and Demand[s] for Immediate Payment." The two demands assessed a total illegal drug tax liability of $126,087. The Tax Commission seized over $49,479 in cash, as well as two vehicles belonging to Garcia, as partial payment for the assessments.

Garcia filed a timely protest and petition for re-determination of the drug tax jeopardy assessments. The Tax Commission set the matter for an informal hearing, but the date of the hearing was deferred by mutual consent of the parties. Approximately three years later, and nine weeks before the hearing, Garcia requested an opportunity to examine and weigh the evidence supporting the tax assessment. The Tax Commission ultimately acknowledged that the seized substances could not be located and had apparently been destroyed. At the hearing, Garcia argued that imposition of the tax not only constituted double jeopardy but also was improper because Garcia had had no opportunity to examine and weigh the seized substances. The Tax Commission affirmed Garcia's tax liability but adjusted the amount of liability down to $113,192 to reflect the substance weights provided by the state laboratory.

In June 1998, Garcia filed a complaint in district court asking for the Tax Commission's decision to be vacated. The Tax Commission and Garcia both moved for summary judgment. After a hearing, the district judge granted summary judgment in favor of the Tax Commission. It affirmed a total liability of $113,192, less the money seized by the Tax Commission and the proceeds realized from the sale of Garcia's two vehicles.

On December 20, 2000, this Court issued an opinion affirming the judgment of the district court. Garcia timely filed a petition for rehearing, which this Court granted on March 5, 2001.

## II.

## STANDARD OF REVIEW

■ Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). The filing of cross-motions for summary judgment does not, of itself, establish that there is no genuine issue of material fact, especially where the opposing motions seek summary judgment upon different issues or theories. *First Sec. Bank of Idaho v. Murphy,* 131 Idaho 787, 790, 964 P.2d 654, 657 (1998). However, when both parties file motions for summary judgment relying upon the same facts, issues, and theories, "the parties essentially stipulate that there is no genuine issue of material fact that would preclude the court from entering summary judgment." *Lowder v. Minidoka County Joint Sch. Dist. No. 331,* 132 Idaho 834, 837, 979 P.2d 1192, 1195 (1999). "On appeal, this Court exercises free review over the entire record that was before the district court in order to determine whether either party is entitled to judgment as a matter of law." *Id.*

## III.

## DISCUSSION

The order on rehearing in this case grants review of the entire case. However, the parties do not present any new argument as to the double jeopardy and the I.C. § 19–315 issues. Therefore, the previous opinion of this Court is restated below with regard to issues A and B, without further analysis.

**A. Imposing the Illegal Drug Tax On Garcia After His Federal Conviction Did Not Violate the Double Jeopardy Clause of the Idaho Constitution Because Article I, Section 13 Does Not Bar Successive Actions By Different Sovereigns.**

■ The Idaho Illegal Drug Tax Act (I.C. §§ 63–4201 to –4211) imposes a tax on the illegal possession of more than minimal quantities of controlled substances. "Every person who in violation of Idaho law" possesses the requisite amount of drugs is liable for the tax. I.C. § 63–4203(1). These persons must affix drug tax stamps to the illegally-possessed drugs. I.C. § 63–4205(1). Persons violating the law are subject to a civil penalty of 100% of the tax, collected as part of the tax, as well as to criminal penalties. I.C. § 63–4207(1), (2). Garcia asserts that imposing the illegal drug tax on him after he had been convicted of possession in federal court violates the double jeopardy provision of the Idaho Constitution.

The United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Idaho Constitution similarly provides that "[n]o person shall be twice put in jeopardy for the same offense." IDAHO CONST. art. I, § 13. Like the Fifth Amendment, Art. I, § 13 prohibits multiple punishments for the same offense. *See State v. Pizzuto,* 119 Idaho 742, 756, 810 P.2d 680, 694 (1991) (*overruled on other grounds by State v. Card,* 121 Idaho 425, 825 P.2d 1081 (1991)).

In 1994, the United States Supreme Court determined that Montana's illegal drug tax was a punishment for double jeopardy purposes. *Dep't of Revenue v. Kurth Ranch,* 511 U.S. 767, 783, 114 S.Ct. 1937, 1948, 128 L.Ed.2d 767, 780 (1994). It reasoned that a combination of four features showed the Montana act to be punishment for double jeopardy purposes. These four features

were its "remarkably high" tax rate, deterrent purpose, dependence on the commission of a crime, and levy upon goods not possessed by the taxpayer. *Id.* at 780–83, 114 S.Ct. at 1946–48, 128 L.Ed.2d at 779–81. Looking at all these features, the Supreme Court concluded that the Montana tax "depart[ed] so far from normal revenue laws as to become a form of punishment." *Id.* at 783, 114 S.Ct. at 1948, 128 L.Ed.2d at 780–81. Garcia asserts that, like the Montana tax, Idaho's illegal drug tax constitutes punishment for double jeopardy purposes.

■ Even if imposition of Idaho's illegal drug tax on Garcia after his federal conviction amounted to a second punishment, it would not offend the Fifth Amendment's double jeopardy clause. The double jeopardy clause of the Fifth Amendment does not bar successive prosecutions by different sovereigns. *Lynn v. West,* 134 F.3d 582, 593 (4th Cir.1998); *see also Heath v. Alabama,* 474 U.S. 82, 88, 106 S.Ct. 433, 437, 88 L.Ed.2d 387, 393–94 (1985). Garcia contends, however, that the dual sovereignty doctrine does not apply to Article I, Section 13 of the Idaho Constitution.

■ In interpreting provisions of the Idaho Constitution, this Court is free to interpret its constitution as more protective than the United States Constitution. *State v. Thompson,* 114 Idaho 746, 748, 760 P.2d 1162, 1164 (1988). However, independent analysis under the Idaho Constitution does not mean that this Court will reach a different result from that reached by the U.S. Supreme Court under a similar constitutional provision. *State v. McCaughey,* 127 Idaho 669, 673, 904 P.2d 939, 943 (1995).

Our previous jurisprudence makes it clear that Idaho's constitutional double jeopardy provision is co-extensive with the Fifth Amendment's double jeopardy clause. *See State v. Sharp,* 104 Idaho 691, 693, 662 P.2d 1135, 1137 (1983) (providing identical analysis of double jeopardy claim under Idaho and U.S. Constitutions); *State v. Reichenberg,* 128 Idaho 452, 457–58, 915 P.2d 14, 19–20 (1996) (declining to interpret double jeopardy provision of the Idaho Constitution differently than the Fifth Amendment in administrative license suspension proceeding); *Berg-*

*lund v. Potlatch Corp.,* 129 Idaho 752, 757, 932 P.2d 875, 880 (1996) (holding that the Idaho double jeopardy clause was co-extensive with its federal counterpart in the context of a state civil forfeiture following a state criminal proceeding). Accordingly, we hold that Article I, Section 13 does not bar successive actions by different sovereigns. Because the dual sovereignty doctrine applies, imposing the illegal drug tax on Garcia after his federal conviction did not violate the double jeopardy clause of the Idaho Constitution.

### B. The Imposition of the Illegal Drug Tax After Garcia's Federal Conviction Does Not Violate Section 19–315 of the Idaho Code.

■ Section 19–315 of the Idaho Code bars "the prosecution or indictment" of an act charged as a public offense that is "within the venue of another state, territory, or country, as well as of this state" once the defendant has been convicted or acquitted of the act by another sovereign. I.C. § 19–315. Garcia asserts that this statute bars the Tax Commission from imposing Idaho illegal drug taxes on him following his federal conviction for drug trafficking.

Section 19–315, clearly applies only to subsequent criminal actions, not civil tax assessments. The section requires that in order for the prohibition to apply, the act must be charged as a public offense in the State of Idaho. Public offenses are violations of the law requiring a conviction before any punishment can be imposed. *See* I.C. § 18–109. The assessment of the illegal drug tax does not require a conviction and is not a public offense. Therefore, I.C. § 19–315 does not prohibit imposing the illegal drug tax on Garcia after his guilty plea to drug possession charges in federal court.

### C. The Government's Destruction of the Seized Evidence Did Not Violate Garcia's Due Process Rights

■ Due process in administrative tax proceedings requires that the taxpayer receive notice and a reasonable opportunity to be heard. *Parsons v. Idaho State Tax*

*Comm'n*, 110 Idaho 572, 576, 716 P.2d 1344, 1348 (Ct.App.1986); *Londoner v. Denver*, 210 U.S. 373, 386, 28 S.Ct. 708, 714, 52 L.Ed. 1103, 1112 (1908). Garcia asserts that his due process rights were violated because the State's apparent destruction of the substances seized from his home and workplace did not give him a chance to verify their chemical identity and their actual weights, matters upon which the Tax Commission made its assessment.

■ The destruction of evidence is not per se a violation of a defendant's due process rights. Whether the destruction of evidence constitutes a due process violation depends upon the nature of the proceeding, the nature of the evidence, and the circumstances surrounding the destruction of the evidence. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1988) (holding "unless a criminal defendant can show bad faith on the part of police, failure to preserve potentially useful evidence does not constitute a denial of due process of law"); *Paradis v. State*, 110 Idaho 534, 539, 716 P.2d 1306, 1311 (1986). This Court has previously held that a specific showing of bad faith is required to constitute a due process violation. In the criminal context, this Court applies a balancing test, which examines "(1) whether the evidence was material to the question of guilt or the degree of punishment; (2) whether the defendant was prejudiced by the loss or destruction of the evidence; and (3) whether the government was acting in good faith when it destroyed or lost the evidence." *State v. Porter*, 130 Idaho 772, 781, 948 P.2d 127, 136 (1997); *State v. Fain*, 116, Idaho 82, 91, 116 Idaho 82, 774 P.2d 252, 261 (1989).

■ In the civil context, this Court applies the same standard as in criminal cases. *Stuart v. State*, 127 Idaho 806, 816, 907 P.2d 783, 793 (1995); *Paradis v. State*, 110 Idaho 534, 539, 716 P.2d 1306, 1311 (1986) (both analyzed in the context of a petition for post-conviction relief, a civil proceeding). If the value of the evidence is known, the person asserting the due process violation has the affirmative burden of establishing both the materiality and prejudice elements of the balancing test. *Stuart* at 816, 907 P.2d at 793. On the other hand, if the value is unknown, the materiality and prejudice elements are presumed and the inquiry focuses on the presence of bad faith. *Id.*

■ The drugs at issue here are not of an exculpatory or unknown value. The drugs, the basis of the jeopardy assessments, were evaluated and tested at the Idaho State Police crime laboratory. The laboratory report, coupled with Garcia's admission that the drugs tested were the same drugs seized by Idaho law enforcement, provides ample evidence that the jeopardy assessment was properly based on the drugs seized. Thus, Garcia has the burden to prove all three elements of the balancing test.

### 1. Garcia has not Established that the Destroyed Evidence was of Exculpatory Value

■ Materiality is defined as evidence which "must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Paradis* at 540 n. 3, 716 P.2d at 1312 n. 3 (citations omitted). Garcia offered no evidence challenging the results of the testing. Based upon the same evidence used for the jeopardy assessments, Garcia pled guilty in federal court to possession of a controlled substance with intent to deliver. This is undeniable evidence that it was legitimate for the Tax Commission to impose a tax on the drugs. In addition, Garcia had alternative measures available to challenge the quantity of the drugs. Although ultimately Garcia was deprived of the opportunity to physically examine the evidence, he was not deprived of a fair and reasonable opportunity to attack the laboratory's testing procedures. Garcia could have questioned the methodology and equipment utilized by the state laboratory in weighing the drugs. Even if Garcia had access to the drug samples, the samples were only material as to the *exact* quantity, and may indeed have been greater in quantity than that to which the Tax Commission eventually agreed. Access to the samples would not have exonerated him from the tax

altogether.[1] Because the evidence at issue is not of an exculpatory nature, it is not material under the balancing test.

### 2. *Garcia has not Established that the Destruction of the Illegal Drugs was Prejudicial*

The second element of the balancing test is whether Garcia was prejudiced by the loss of the evidence. Garcia first received notice of the jeopardy assessment in 1993, within two days of the drugs being seized. This was at a time when the drugs, the basis of the drug tax assessment, were clearly available to be tested. Garcia did not request to examine the drugs until October 10, 1997, approximately four years after he received notice of the assessment. The federal discovery rules relevant to the federal criminal charges brought against Garcia also afforded him the opportunity to conduct an inspection of the drugs. *See* Fed.R.Crim.P. 16(a)(1)(C).[2] Pursuant to Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure, Garcia had the opportunity to inspect, weigh and test the illegal drugs during the twelve months from the date the drugs were seized to the date he pled guilty to the federal charges. Instead, Garcia waited almost four years from the date the drugs were seized, and three years from the date he pled guilty to the federal charges.

Idaho Code § 63–4208(2)(b) provides that a person aggrieved by a drug tax jeopardy assessment has 30 days from the date the assessment was mailed or served to file a petition with the Tax Commission for a rede-termination of the assessment. Although Garcia did timely protest the assessment, he failed to recite any legal or factual basis for the objection as required by the Tax Commission's rules. *See generally* I.D.A.P.A. 35.01.13.019.02.a. Garcia requested an informal conference, but because of the pending federal prosecution, the date of the hearing was deferred by mutual consent of the parties. After 3½ years had passed from the issuance of the assessments, the Tax Commission, believing that the parties had mutually agreed that an informal conference was not necessary, issued its final decision upholding the assessments. When Garcia's attorney objected because a hearing had never been held, the Tax Commission withdrew its decision and scheduled an informal conference on December 16, 1997. Nine weeks prior to the hearing, almost four years from the issuance of the assessments, Garcia's attorney finally requested an opportunity to examine and weigh the evidence. The Tax Commission then informed Garcia's attorney that it did not have possession of the evidence seized by law enforcement and the drugs had in all likelihood been destroyed. Therefore, Garcia has not shown he was prejudiced by the Tax Commission's failure to produce the missing drugs.

### 3. *Garcia has not Shown that the Destruction of the Illegal Drugs was Done in Bad Faith*

The final element of the balancing test requires a specific showing that the evidence

---

1. This was an important point in *State v. Fain*, 116, Idaho 82, 91, 116 Idaho 82, 774 P.2d 252, 261 (1989), where this Court held that *"under certain circumstances* due process requires that the state preserve [evidence]". (emphasis added). *Fain*, a criminal case, involved the states destruction of swabs used in a "sex crime kit". *Id.* The Court noted when evidence with a potentially exculpatory value to a criminal defendant has been lost or destroyed by the state, there is nothing the court can do to restore the defendant to *exactly* the same position he would have been in had the evidence been preserved. *Id.* (Emphasis added). However, there are certain measures to ensure that the defendant receives a fair trial even though he no longer has access to exculpatory material which the prosecution had at one time already gathered. *Id.* The *Fain* Court held that even if the defendant had the semen samples available for testing, such samples would yield test results that would only be material as to a lewd and lascivious conduct charge and could not possibly exonerate the defendant as to kidnapping and murder charges.

2. Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure provides: "Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant."

was destroyed in bad faith. A showing of bad faith is required regardless of whether the exculpatory nature of the evidence is known or not. *Stuart* at 806, 907 P.2d at 793.

Garcia has failed to make a showing of bad faith. As stated above, Garcia had the opportunity to inspect, weigh and test the illegal drugs during the twelve months from the date the drugs were seized to the date he pled guilty to the federal charges. Garcia waited almost four years from the date the drugs were seized, and three years from the date he pled guilty to the federal charges. Garcia's failure to request the drugs for such an extensive lapse of time failed to put the Tax Commission on notice that such evidence could be exculpatory. *See, generally, Youngblood,* 488 U.S. at 56–57 n. *, 109 S.Ct. 336–37 n. *, 102 L.Ed.2d 288–89 n. * (presence or absence of bad faith turns on government's knowledge of exculpatory value of the evidence at time it was lost or destroyed).

▮ Garcia argues that an exception to the bad faith requirement should be created because the destroyed drugs are so critical to his defense that without them he is deprived of his due process rights. Garcia, however, presents no compelling reason to depart from the bad faith requirement in this case. Conceivably, there could be some circumstances where, even without bad faith, there may be a due process violation. For example, in some instances, evidence may be so critical that requiring a showing of bad faith may make the proceedings fundamentally unfair, depriving the party of due process protections.[3] This merely restates the fundamental analysis of due process: whether there has been notice and an opportunity to be heard.

Because Garcia has failed to meet the requisite elements of the balancing test, his due process rights were not violated.

### IV.

### CONCLUSION

The Tax Commission's imposition of the illegal drug tax on Garcia after his federal conviction did not violate the double jeopardy clause of the Idaho Constitution because Article I, Section 13 does not bar successive actions by different sovereigns. The imposition of the illegal drug tax also did not violate statutory law because Idaho Code § 19–315 only prohibits duplicative criminal proceedings. The destruction of the seized evidence before the tax assessment hearing did not violated Garcia's due process rights because there was no showing of bad faith on the part of the State. Therefore, the judgment of the district court is affirmed.

Justices SCHROEDER, WALTERS and EISMANN, CONCUR.

Justice KIDWELL, DISSENTING AS TO SUBSECTION B.

I respectfully dissent from Subsection B of the majority's opinion because I believe that the Tax Commission's destruction of the seized evidence, prior to the assessment hearing, violated Garcia's due process rights.

Although Garcia made a timely protest to his initial drug tax jeopardy assessments, the Tax Commission, without a hearing, issued a decision upholding the two assessments over 3½ years after the seizures. Only when Garcia protested did the Tax Commission schedule an informal hearing. Nine weeks before the hearing, Garcia requested an opportunity to examine and weigh the substances that formed the basis of the Tax Commission's assessment. The Tax Commission eventually informed him that it did not have posses-

---

3. Such a case would be more likely in a criminal case. Due process requires more protection in criminal cases, and while the same protection can be afforded in civil cases, it is not required. *See generally State v. Paz,* 118 Idaho 542, 561, 798 P.2d 1, 20 (1990) (Bistline J. concurring in part, dissenting in part) (stating "civil precedent … cannot simply be transposed wholesale into the criminal context. The two traditions are vastly different. They serve different purposes, and the rules which govern each are also vastly different. To assume, … that civil and criminal precedents are interchangeable, is to totally ignore those great differences.") This point is also noted by Justice Stevens in his concurrence in *Arizona v. Youngblood,* 488 U.S. 51, 60–61, 109 S.Ct. 333, 338–39, 102 L.Ed.2d 281, 290–91 (1988), where he refers to the possibility that the destruction of evidence, in some circumstances, may be so critical to the defense as to make *criminal* trial fundamentally unfair. (Emphasis added).

sion of the substances, which apparently had been lost or destroyed either by the state or the federal government.

The Tax Commission's assessments are presumed valid, and Garcia bore the burden of proving that the assessment was incorrect. I.C. § 63-4208(4). Without access to the seized substances, Garcia could produce no evidence to refute the weights provided by the Tax Commission in support of its assessment. The Tax Commission conceded that the record did not show whether Garcia even received copies of the state laboratory reports before the hearing. The notices of jeopardy assessment and state laboratory reports used by the Tax Commission provided vastly differing figures as to the weight of the seized substances. One state laboratory report acknowledged that the nominal weight (103.88 grams) of almost ⅔ of the cocaine seized from Garcia's workplace was approximate. Under these circumstances, it was clear that the weight of the seized substances, and thus the amount of Garcia's tax liability, was at issue at the hearing. Garcia simply had no opportunity to respond to the Tax Commission's evidence and to present his own evidence on his tax liability.

The majority holds that, under *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the destruction of the seized evidence did not violate Garcia's due process rights, because Garcia made no showing that the State acted in bad faith in losing or destroying the evidence. In *Youngblood*, the U.S. Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58, 109 S.Ct. at 337, 102 L.Ed.2d at 289. In *Youngblood*, police had failed to refrigerate clothing from a sexual assault victim that contained semen samples from the assailant. *Id.* at 53, 109 S.Ct. at 334, 102 L.Ed.2d at 286. A swab taken from the victim suggested, but did not prove, that the assailant's blood type differed from that of the defendant.[4] *Id.* at 68, 109 S.Ct. at 342, 102 L.Ed.2d at 296 (Blackmun, J., dissent-

ing). Failure to refrigerate the clothing made the semen samples deteriorate so that they were useless for establishing the assailant's blood type. *Id.* at 54, 109 S.Ct. at 335, 102 L.Ed.2d at 286. The Supreme Court held that the non-preserved semen samples were not material. *Id.* at 56 n*, 109 S.Ct. at 336 n*, 102 L.Ed.2d at 289 n*. The Court characterized the samples as evidentiary material "of which no more can be said than that [they] could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* at 57, 109 S.Ct. at 337, 102 L.Ed.2d at 289. The Supreme Court stressed that the State did not even attempt to use the semen samples in its own case in chief and that the defendant's expert had access to all of the forensic evidence actually used by the State. *Id.* at 55–56, 109 S.Ct. at 335–36, 102 L.Ed.2d at 287–88. This is considerably different than the case before us.

In contrast, the substances seized from Garcia were obviously material as to his tax liability and provided the basis for the Tax Commission's assessment; yet, the evidence was never made available to Garcia. This case is similar to *Ex parte Gingo*, where the Supreme Court of Alabama held that, because discarded evidence of allegedly illegally dumped hazardous substances was critical to the defense, it was "fundamentally unfair" to allow the State to use the results of laboratory tests on destroyed samples in the criminal trial when the defendants had no access to the tested samples. 605 So. 2d 1237, 1241 (Ala. 1992) (quoting *Youngblood*, 488 U.S. at 61, 109 S.Ct. at 339, 102 L.Ed.2d at 291 (Stevens, J., concurring in the judgment)).

Here, the Tax Commission assessed illegal drug taxes on Garcia solely because of the State-provided weights of the seized substances. The identity and weight of the substances were critical to determining Garcia's tax liability. Because *Youngblood* does not apply to the facts of this case, Garcia was not required to show that the State acted in bad faith in destroying the evidence. Garcia had no means of contesting the Tax Commission's assessment without access to the evidence

---

4. Certain aspects of blood type can be determined from semen. *Youngblood*, 488 U.S. at 68,

109 S.Ct. at 342, 102 L.Ed.2d at 296 (Blackmun, J., dissenting).

upon which the assessment was based. Therefore, destruction of the seized evidence before the tax assessment hearing violated Garcia's due process rights, and the tax assessment should be vacated.